Thomas J. Salerno (No. 007492)
Anthony P. Cali (No. 028261)
**STINSON LEONARD STREET LLP**
1850 N. Central Avenue, Suite 2100
Phoenix, Arizona 85004-4584
Tel: (602) 279-1600
Fax: (602) 240-6925
Thomas.salerno@stinson.com
Anthony.cali@stinson.com
Proposed Attorneys for Debtor and
Debtor-in-Possession

### IN THE UNITED STATES BANKRUPTCY COURT

### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re<br><br>CANYON PORTAL II, LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 2:15-bk-16313-EPB<br><br>**EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING USE OF CASH COLLATERAL**<br><br>**Date of Hearing: TBD**<br>**Time of Hearing: TBD** |

Canyon Portal II, LLC ("**Debtor**") debtor-in-possession in the above-captioned Chapter 11 case, moves this Court for entry of an interim and a final order under 11 U.S.C. § 363 and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") authorizing the Debtor to use cash collateral to pay all of the Debtor's normal and ordinary operating expenses as will come due in the ordinary course of the Debtor's business and to preserve the going concern value of the Debtor's business, assets and reorganization and/or sale efforts.. This Motion seeks entry of an order granting the Motion.

> The relief requested in this Motion would authorize the Debtor to use cash collateral. The basis for the relief request in this Motion is set forth in paragraphs 21 through 32 below.

This Motion is supported by the entire record before the Court, the *Omnibus Declaration of Al Spector in Support of Chapter 11 Petition and First Day Motions*" (the "**Spector Declaration**") filed contemporaneously with this Motion, and by the following memorandum of points and authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. BACKGROUND.

#### Jurisdiction and Venue

1. On December 31, 2015, Debtor filed its Voluntary Petition for relief under Chapter 11 of the United States Bankruptcy Code.

2. The Debtor is a debtor-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

3. No trustee, examiner, or official committee has been appointed in any of the cases.

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are Bankruptcy Code §§ 105(a) and 366.

#### Background Facts Concerning the Debtor

5. In support of this Motion, the Debtor incorporates by reference the statements set forth in the Spector Declaration.

6. The Debtor came into existence in about 1992 when it bought an interest in the leasehold associated with certain property located at 270 N. Highway 89A, Sedona, Arizona (the "**Property**"), which at that time had only 15 years remaining on the life of the lease. The Debtor currently owns the Property. Spector Declaration ¶ 9.

7. On June 30, 1998 Carla Lepori Coniglio, as Trustee of the Carla Lepori Coniglio Living Trust and personally as the wife of Philip Coniglio as to her sole and separate property, and as the agent for all other owners of the pertinent land as set forth in the Durable General Power of Attorney, recorded March 25, 2004 in the Official Records of Coconino County, Arizona as Instrument No. 2004-3254669 (collectively, the "**Original Landlord**") and Canyon Portal, LLC, an Arizona limited liability company (the "**Original Tenant**") entered into the Amended and Restated Commercial Lease,

a Memorandum of which was record on July 2, 1998 in Docket 98-21399, page 361 of the Official Records of Coconino County, Arizona (the "**Ground Lease**"). Spector Declaration ¶ 10.

8. On or about December 18, 2001, with the Landlord's approval, Original Tenant assigned its interest in the Ground Lease to the Debtor. Spector Declaration ¶ 11.

9. The Property contains 25 separate lease spaces and a total of 47,458 square feet, of which 26,146 is retail and 21,312 are the thirty-thee (33) hotel units leased to The Orchards Inn of Sedona. Spector Declaration ¶ 12.

10. The Property is 97.3% leased and occupied. The location of the Property is among the best in Sedona, occupying the middle block on Highway 89A, where most of the 3 million annual Sedona tourists visit. Accordingly, rents for the Property are high, ranging from a low of more than $4.50 per square foot per month for the largest retail space of 6,870 square feet to a high of more than $28 per square foot per month for a small space of 368 square feet. Spector Declaration ¶ 13.

11. The Debtor is managed by Barret Realty, LLC. Spector Declaration ¶ 14.

12. The Debtor has invested millions of dollars in improving the Property. The building known as the Trading Post Building (consisting of 8466 square feet) was renovated and an additional 2200 square feet was added onto the building in or around 1998. The building known as the Canyon Portal Building (consisting of 5061 square feet) was renovated. Old motel units associated with the Property were torn down and the building known as the North Retail Building (consisting of 12,066 square feet) was built in or around 1999. A large basement parking lot was also built under the North Retail Building. Spector Declaration ¶ 15.

13. The leasehold was renegotiated in July 2013, so that there are now fifty-five (55) years remaining on the Ground Lease. The Ground lease was also recently renegotiated in October, 2015 to lower the Ground Lease payments substantially—a reduction of almost $200,000 per year in payments. Spector Declaration ¶ 16.

<u>The Debtor's Credit Facility</u>

14. On or about December 15, 2005, the Debtor procured a loan from J.P. Morgan Chase, N.A. (the "**Original Lender**") in the original principal amount of $21,000,000 (the "**Loan**").[1] Spector Declaration ¶ 17.

15. U.S. Bank National Association, as Trustee, successor in interest to Bank of America, National Association, successor by merger to LaSalle Bank National Association, as trustee for the registered holders of J. P. Morgan Chase Commercial Mortgage Securities Trust 2006-CIBC14, Commercial Mortgage Pass-Through Certificates, Series 2006-CIBC14 (the "**Noteholder**") is the current owner and holder of the above-referenced Mortgage Loan evidenced, secured and governed by various documents (the "**Loan Documents**") including, but not limited to (i) a Note; (ii) the certain Deed of Trust Security Agreement dated as of December 15, 2005 executed by Debtor, as trustor, in favor of Pioneer Title Agency, Inc., as trustee, for the benefit of J.P. Morgan Chase, N.A. (the "**Original Lender**"), as beneficiary; and (iii) that certain Assignment of Leases and Rents dated as of December 15, 2005, executed by the Debtor, as assignor, in favor of Original Lender, as assignee. Spector Declaration ¶ 18.

16. C-III Asset Management LLC ("**C-III**") is the special servicer for the Noteholder. Spector Declaration ¶ 19.

17. The Debtor believes that C-III's asserted secured claim as of the Petition Date is approximately $22,314,000.00. Spector Declaration ¶ 20.

18. As of the Petition Date, the Debtor is current on the Loan and there have been no monetary defaults thereunder. Spector Declaration ¶ 26.

19. The Debtor and C-III, however, currently have a dispute as to the Noteholder's charge of $319,732.73 in allegedly accrued interest. The Debtor has been unable to obtain any justification for the interest charges from the Noteholder. Spector Declaration ¶ 23.

20. An appraisal commissioned by the Debtor in 2015 valued the Debtor's interest in the Property at approximately $29,500,000.00. Spector Declaration ¶ 21

---

[1] While the Loan was originally made by J.P. Morgan Chase, N.A., it has since been securitized and is held in a securitization trust.

## II. RELIEF REQUESTED.

21. By this Motion, the Debtor seeks authority to use, in the ordinary course of business, the cash collateral in which C-III may have an interest (the "**Cash Collateral**"). In this case, the Debtor possesses cash collateral from its leasing operations and needs to use cash collateral to pay its operating and other expenses as set forth in the detail Cash Collateral Budget attached hereto as Exhibit A. Spector Declaration ¶ 35. The Debtor has no other source of operating revenue with which the pay such expenses and if such expenses are not paid the Debtor will be unable to continue its operations. Spector Declaration ¶ 36.

22. The Debtor's use of property of its estate is governed by Bankruptcy Code § 363(c), which provides in relevant part:

> If the business of the debtor is authorized to be operated under section . . . 1108 . . . of this title and unless the court orders otherwise, the [debtor] may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

Bankruptcy Code § 363(c). A debtor-in-possession has all of the rights and powers of a trustee with respect to property of the estate, including the right to use property of the estate in compliance with Bankruptcy Code § 363. *See* 11 U.S.C. § 1107(a).

23. Under Bankruptcy Code § 363(c)(2), the Court may authorize the Debtor to use cash collateral as long as the applicable secured creditors consent or are adequately protected. *See In re Mellor*, 734 F.2d 1396, 1400 (9th Cir. 1984); *Security Leasing Partners, LP v. ProAlert, LLC (In re ProAlert, LLC)*, 314 B.R. 436 (B.A.P. 9th Cir. 2004) (authorizing use of cash collateral to pay debtor's professional fees as long as the secured creditor is adequately protected); *In re Delta Resources, Inc.*, 54 F.3d 722 (11th Cir. 1995); *In re McCormick*, 354 B.R. 246, 251 (Bankr. C.D. Ill. 2006) (providing that use of cash collateral of a secured creditor requires the secured creditor's consent or adequate protection of the secured creditor's interest in the cash collateral); *In re Senior Care Props., Inc.*, 137 B.R. 527 (Bankr. N.D. Fla. 1992); *In re Lane*, 108 B.R. 6 (Bankr. D. Mass. 1989).

24. "Cash collateral" is defined by the Bankruptcy Code as "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest . . . ." Bankruptcy Code § 363(a).

25. As of the date of this Motion, the Debtor does not have an agreement with C-III concerning consensual use of Cash Collateral. Spector Declaration, ¶ 34.[2] Regardless of whether C-III consents to the Debtor's use of Cash Collateral, the Court may approve the Debtor's use of Cash Collateral if the Court determines that sufficient adequate protection exists. Bankruptcy Code § 361 provides that replacement liens, periodic cash payments, or relief constituting the "indubitable equivalent" of the creditor's interest may constitute adequate protection. *See In re Potvin Lumber Co., Inc.*, 24 B.R. 54 (Bankr. D. Vt. 1982) (ordering that the debtor could use cash collateral, and finding that the bank was adequately protected because the total value of the debtor's personal property exceeded the bank's indebtedness); *see also In re Coventry Commons Assocs.*, 149 B.R. 109 (Bankr. E.D. Mich. 1992); *In re Resolution Trust Co. v. Swedeland Dev. Grp. Inc. (In re Swedeland Dev. Grp., Inc.)*, 16 F.3d 552, 564 (3d Cir. 1994).

26. The Debtor proposes to provide adequate protection to C-III by providing adequate protection payments to C-III in the form of monthly interest payments at the non-default rate of interest as provided for in the Loan Documents (the "**Adequate Protection Payments**"). The Adequate Protection Payments will commence on January 30, 2015 or the date which is ten days after the entry of the Interim Order, whichever is later, and will continue until confirmation of the Debtor's Chapter 11 Plan or further order of the Court, whichever is earlier. Spector Declaration, ¶ 37.

27. In this case, C-III is also protected by the equity cushion in the Debtor's interest in the Property, as well as the maintenance of its collateral as a going concern. In this case, the Debtor's Property assets are not decreasing in value. Spector Declaration, ¶ 38.

---

[2] The Debtor has provided a copy of this Motion and operating budget to counsel for C-III (along with all other filed motions). Debtor is hopeful that agreement can be reached at least on some issues prior to the hearing on this matter.

28. The Debtor submits that the Adequate Protection Payments set forth above are sufficient to adequately protect C-III with respect to the Debtor's use of Cash Collateral.[3] Spector Declaration, ¶ 39.

29. Moreover, the Debtor is also continuing and preserving the going concern value of its business during the requested time period for use of the Cash Collateral. Spector Declaration, ¶ 40.

30. Courts have held that the determination of adequate protection requires a case-by-case factual analysis. *See In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir. 1987); *In re Martin*, 761 F.2d 472 (8th Cir. 1985); *see also* S. Rep. No. 95-989, 95th Cong., 2d Sess. 54 (1978); *In re Quality Interiors, Inc.*, 127 B.R. 391 (Bankr. N.D. Ohio 1991) (holding that the grant of a replacement lien provided adequate protection).

31. The Debtor submits that by virtue of the Adequate Protection Payments, C-III is adequately protected with respect to any diminution in the value of the Cash Collateral resulting from the Debtor's use of such Cash Collateral under Bankruptcy Code §§ 361 and 363. Any funds allegedly constituting Cash Collateral will be used by the Debtor only pursuant to the Budget set forth in <u>Exhibit A</u> attached hereto with an allowed variance of ten percent (10%) for each line item.

32. Moreover, the Debtor is also continuing and preserving the going concern value of its business during the requested time period for use of the Cash Collateral. *See, e.g., In re Erie Hilton Joint Venture*, 125 B.R. 140, 149 (Bankr. W.D. Pa. 1991) ("Preservation of the going-concern value of the business can constitute a benefit to the secured creditor."); *In re Princeton Square Assocs.*, 201 B.R. 90, 96 (Bankr. S.D.N.Y. 1996) ("[T]his court concludes that no monetary protection is required to be provided by the debtor in possession to the secured creditor to the extent that the rents are applied for the maintenance of the property in the manner a receiver would apply the rents.")

---

[3] The Debtor also submits that the Adequate Protection Payments constitute sufficient monthly payments under Bankruptcy Code § 362(d)(3)(B).

### III. CONCLUSION.

WHEREFORE, the Debtor respectfully requests that the Court enter an order, substantially in the form attached to this Motion as Exhibit B, granting: (a) the relief requested in this Motion; and (b) such further relief as the Court may deem just and proper.

RESPECTFULLY SUBMITTED this 31st day of December, 2015.

**STINSON LEONARD STREET LLP**

By: /s/ Thomas J. Salerno
Thomas J. Salerno, Esq.
Anthony P. Cali, Esq.
1850 N. Central Avenue, Suite 2100
Phoenix, Arizona 85004-4584
Proposed Attorneys for Debtor and Debtor-in-Possession

COPY of the foregoing sent this 31st day of December, 2015:

Office of the U.S. Trustee
230 N. First Ave., Ste. 204
Phoenix, AZ 85003-1706
ustpregion14.px.ecf@usdoj.gov

/s/ Anne Finch

# EXHIBIT A

Canyon Portal II, LLC
Budget Projections 2016

|  | Jan-16 | 16-Feb | 16-Mar |
|---|---:|---:|---:|
| **Ordinary Income/Expense** | | | |
| **Income** | | | |
| Affordable Housing rent | 550.00 | 550.00 | 550.00 |
| CAM Income | | | |
| Non-Taxable | | | |
| Utilities | 452.71 | 452.71 | 452.71 |
| Total Non-Taxable | 452.71 | 452.71 | 452.71 |
| Taxable | 43,906.68 | 43,890.73 | 43,831.11 |
| CAM Income - Other | 555.64 | 555.68 | 555.68 |
| Total CAM Income | 44,915.03 | 44,899.12 | 44,839.50 |
| Retail | | | |
| Management Fee | 6,093.00 | 6,008.29 | 6,056.58 |
| Rent | 154,020.70 | 148,902.78 | 178,789.32 |
| Total Retail | 160,113.70 | 154,911.07 | 184,845.90 |
| **Total Income** | **205,578.73** | **200,360.19** | **230,235.40** |
| **Gross Profit** | **205,578.73** | **200,360.19** | **230,235.40** |
| **Expense** | | | |
| CAM Expense | | | |
| Pest Control | 0.00 | 175.00 | 0.00 |
| Accting for CAMS | 1,000.00 | 1,000.00 | 1,000.00 |
| Accounting - Consultant | 350.00 | 525.00 | 455.00 |
| Bus Lounge | 4,233.16 | 4,233.16 | 4,233.16 |
| Equipment | 0.00 | 0.00 | 2,120.00 |
| Insurance - Liability | 1,828.00 | 1,828.00 | 1,828.00 |
| IT Support | 290.00 | 290.00 | 290.00 |
| Public Restroom | | | |
| Public Restroom Supplies | 1,492.00 | 979.99 | 3,073.81 |
| Public Restroom Labor | 4,300.00 | 4,300.00 | 4,300.00 |
| Total Public Restroom | 5,792.00 | 5,279.99 | 7,373.81 |
| Maintenance | | | |
| Elevator | 0.00 | 0.00 | -265.97 |
| Landscaping | | | |
| Landscaping Labor | 1,400.00 | 1,400.00 | 1,400.00 |
| Landscaping Other | 175.00 | 175.00 | 175.00 |
| Total Landscaping | 1,575.00 | 1,575.00 | 1,309.03 |

Canyon Portal II, LLC
Budget Projections 2016

|  | Jan-16 | 16-Feb | 16-Mar |
|---|---:|---:|---:|
| **Labor Costs** | | | |
|    Maintenance Crew | 8,500.00 | 8,500.00 | 8,500.00 |
|    Property Manager | | | |
|    Lexy - CAMS | 500.00 | 500.00 | 500.00 |
| **Total Labor Costs** | 9,000.00 | 9,000.00 | 9,000.00 |
| | | | |
|   Maintenance Contract | 75.00 | 0.00 | 0.00 |
|   Repairs | 2,500.00 | 3,000.00 | 0.00 |
|   Supplies | 202.89 | 103.30 | 440.49 |
| **Total Maintenance** | 13,352.89 | 13,678.30 | 10,749.52 |
| | | | |
|   Office Supplies for CAMS | 0.00 | 0.00 | 34.99 |
|   Property tax | 9,075.47 | 9,075.47 | 9,075.47 |
|   Telephone | 268.83 | 163.00 | 376.66 |
|   Utilities | | | |
|     Electricity | 2,298.07 | 67.19 | 3,890.18 |
|     Gas | 127.89 | 73.46 | 70.13 |
|     Sewer | 618.87 | 606.14 | 606.14 |
|     Trash Removal | 0.00 | 789.90 | 727.77 |
|     Water | 440.45 | 401.60 | 387.92 |
|   **Total Utilities** | 3,485.28 | 1,938.29 | 5,682.14 |
| | | | |
|   Total CAM Expense | 39,675.63 | 38,186.21 | 43,218.75 |
| | | | |
|   Ground Lease Rent | 22,500.00 | 22,500.00 | 50,000.00 |
| | | | |
| **Total Expense** | 62,175.63 | 60,686.21 | 93,218.75 |
| | | | |
| Net Ordinary Income | 143,403.10 | 139,673.98 | 137,016.65 |
| | | | |
| Other Income/Expense | | | |
|   Other Income | 0.00 | 0.00 | 0.00 |
| | | | |
|   Other Expense | | | |
|     Bank Service Charges | 194.00 | 993.00 | 966.00 |
| | | | |
|   Adequate Protection Payment | 110,418.61 | 110,418.61 | 99,732.93 |
|   Total Loan Expense | 110,418.61 | 110,418.61 | 99,732.93 |
| | | | |
|   Management Fee | 15,000.00 | 15,000.00 | 15,000.00 |
| | | | |
|   Office | | | |
|     Postage and Delivery | 10.00 | 10.00 | 10.00 |
|   Total Office | 10.00 | 10.00 | 10.00 |

Canyon Portal II, LLC
Budget Projections 2016

|  | Jan-16 | 16-Feb | 16-Mar |
|---|---:|---:|---:|
| Property Analyst | | | |
|   Lexy - Non CAM | 2,000.00 | 2,000.00 | 2,000.00 |
| Total Property Analyst | 2,000.00 | 2,000.00 | 2,000.00 |
| | | | |
| Marketing Fees | 0.00 | 0.00 | 50.00 |
| Professional Fees - Bankruptcy | 10,000.00 | 10,000.00 | 10,000.00 |
| Consultant Fees | 5,000.00 | 5,000.00 | 5,000.00 |
| Total Fees | 15,000.00 | 15,000.00 | 15,050.00 |
| | | | |
| **Total Other Expense** | 142,428.61 | 142,428.61 | 131,792.93 |
| | | | |
| **Net Other Income** | -142,428.61 | -142,428.61 | -131,792.93 |
| | | | |
| **Net Income** | 974.49 | -2,754.63 | 5,223.72 |

# EXHIBIT B

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re<br><br>CANYON PORTAL II, LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 2:15-bk-16313-EPB<br><br>**INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL** |

This matter came before the Court pursuant to *Emergency Motion for Interim and Final Orders Authorizing Use of Cash Collateral* (the "**Motion**") filed on December 31, 2015 by Canyon Portal II, LLC ("**Debtor**") debtor-in-possession in the above-captioned Chapter 11 case, seeking entry of an interim and a final order under 11 U.S.C. § 363 and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") authorizing the Debtor to use cash collateral to pay the Debtor's normal and ordinary operating expenses as will come due in the ordinary course of the Debtor's business and to preserve the going concern value of the Debtor's business, assets and reorganization and/or sale efforts. Upon consideration of the Motion, and the Court have heard the matter on an expedited basis,

**THE COURT HEREBY FINDS**, that

1.   On December 31, 2015, Debtor filed its Voluntary Petition for relief under Chapter 11 of the United States Bankruptcy Code.

2.   The Debtor is a debtor-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

3.   No trustee, examiner, or official committee has been appointed in any of the cases.

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

Background

5. The Debtor came into existence in about 1992 when it bought an interest in the leasehold associated with certain property located at 270 N. Highway 89A, Sedona, Arizona (the "**Property**"). The Debtor currently owns the Property.

6. On June 30, 1998 Carla Lepori Coniglio, as Trustee of the Carla Lepori Coniglio Living Trust and personally as the wife of Philip Coniglio as to her sole and separate property, and as the agent for all other owners of the pertinent land as set forth in the Durable General Power of Attorney, recorded March 25, 2004 in the Official Records of Coconino County, Arizona as Instrument No. 2004-3254669 (collectively, the "**Original Landlord**") and Canyon Portal, LLC, an Arizona limited liability company (the "**Original Tenant**") entered into the Amended and Restated Commercial Lease, a Memorandum of which was record on July 2, 1998 in Docket 98-21399, page 361 of the Official Records of Coconino County, Arizona (the "**Ground Lease**").

7. On or about December 18, 2001, with the Landlord's approval, Original Tenant assigned its interest in the Ground Lease to the Debtor.

8. The Property contains 25 separate lease spaces and a total of 47,458 square feet, of which 26,146 is retail and 21,312 are the thirty-thee (33) hotel units leased to The Orchards Inn of Sedona.

9. The Property is 97.3% leased and occupied.

The Debtor's Credit Facility

10. On or about December 15, 2005, the Debtor procured a loan from J.P. Morgan Chase, N.A. (the "**Original Lender**") in the original principal amount of $21,000,000 (the "**Loan**").

11. U.S. Bank National Association, as Trustee, successor in interest to Bank of America, National Association, successor by merger to LaSalle Bank National Association, as trustee for the registered holders of J. P. Morgan Chase Commercial Mortgage Securities Trust 2006-CIBC14, Commercial Mortgage Pass-Through Certificates, Series 2006-CIBC14 (the "**Noteholder**") is the current

owner and holder of the above-referenced Mortgage Loan evidenced, secured and governed by various documents (the "**Loan Documents**") including, but not limited to (i) a Note; (ii) the certain Deed of Trust Security Agreement dated as of December 15, 2005 executed by Debtor, as trustor, in favor of Pioneer Title Agency, Inc., as trustee, for the benefit of J.P. Morgan Chase, N.A. (the "**Original Lender**"), as beneficiary; and (iii) that certain Assignment of Leases and Rents dated as of December 15, 2005, executed by the Debtor, as assignor, in favor of Original Lender, as assignee.

12. C-III Asset Management LLC ("**C-III**") is the special servicer for the Noteholder.

13. The Debtor believes that C-III's asserted secured claim as of the Petition Date is approximately $22,314,000.00.

14. As of the Petition Date, the Debtor is current on the Loan and there have been no monetary defaults thereunder.

15. The Debtor and C-III, however, currently have a dispute as to the Noteholder's charge of $319,732.73 in allegedly accrued interest.

16. The Debtor possesses cash collateral from its leasing operations and needs to use cash collateral to pay its operating and other expenses as set forth in the detail Cash Collateral Budget attached to the Motion as Exhibit A (the "**Budget**").

17. The Debtor has no other source of operating revenue with which the pay such expenses and if such expenses are not paid the Debtor will be unable to continue its operations.

18. The Debtor is continuing and preserving the going concern value of its business during the requested time period for use of the Cash Collateral.

**IT IS HEREBY ORDERED:**

19. Pending further order of the Court, for the purposes of this Order only, the Debtor's cash on hand and any cash proceeds from the Debtor's interest in the Property shall constitute the cash collateral (the "**Cash Collateral**") of the Bank pursuant to Bankruptcy Code § 363(a).

20. Pending further order of the Court, the Debtor may use the Cash Collateral in the ordinary course of business without further notice, hearing, or order of the Court, and without further

consent of the C-III. The Debtor may use the Cash Collateral pursuant to the Budget with an allowed variance of ten percent (10%) for each line item therein.

21. The Debtor shall account for its use of the Cash Collateral by timely serving a copy of its monthly operating reports to C-III.

22. As adequate protection for its use of the Cash Collateral, the Debtor will make adequate protection payments to C-III in the form of monthly interest payments at the non-default rate of interest as provided for in the Loan Documents (the "**Adequate Protection Payments**") and as specified in the Budget. The Adequate Protection Payments will commence on January 30, 2015 or the date which is ten days after the entry of this Order, whichever is later, and will continue until confirmation of the Debtor's Chapter 11 Plan or further order of the Court, whichever is earlier.

23. By virtue of the Adequate Protection Payments, C-III is adequately protected with respect to any diminution in the value of the Cash Collateral resulting from the Debtor's use of such Cash Collateral under Bankruptcy Code §§ 361 and 363.

24. A Final Hearing on the Debtor's Motion and the terms and conditions of this Interim Order shall be held on _____, 2016, at ___:___ _.m.

25. The Debtor shall mail notice of the Final Hearing, together with a copy of this Interim Order, to (i) counsel for C-III, (ii) the entities listed on the list of Creditors Holding the 20 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (iii) the Office of the United States Trustee for the District of Arizona, 230 North First Avenue, Suite 204, Phoenix, AZ 85003; and (iv) counsel for any statutory committed appointed under Bankruptcy Code § 1102.

26. Any objection to the relief sought in the Motion shall be made in writing setting forth with particularity the grounds thereof, and filed with the Court and served so as to be actually received no later than _____, 2016 (the "**Objection Deadline**"). Such party shall file and serve written objections on (i) Stinson Leonard Street, LLP, 1850 N. Central Avenue, Suite 2100, Phoenix, AZ 85004 (Attn: Anthony P. Cali, Esq.); (ii) the Office of the United States Trustee for the District of Arizona, 230 North First Avenue, Suite 204, Phoenix, AZ 85003; (iii) the entities listed on the List of Creditors Holding the 20 Largest Unsecured Claims filed pursuant to Bankruptcy Rule

1007(d); (iv) counsel for any statutory committee appointed under Bankruptcy Code § 1102. Such objection shall be filed with the Clerk of the United States Bankruptcy Court, District of Arizona.

27. Notwithstanding the possible applicability of Bankruptcy Rules 6004, 7062 or 9014, the terms and conditions of this Interim Order shall be immediately effective and enforceable on its entry.

28. This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Interim Order.

**DATED AND SIGNED ABOVE.**